## MILL RIVER WOOLEN MANUFACTURING COMPANY *vs.* CHARLES E. ·SMITH.

Where land is bounded in a deed by an artificial mill pond, and not expressly or by clear implication by the margin, the grantee takes to the middle of the original stream as if no pond existed. [One judge dissenting ]

This rule applied to a mill pond that had been in existence more than two hundred years.

The owners of the water of a mill pond own the ice formed upon it, and the riparian proprietors have no right, as owners of the soil, to remove it.

TRESPASS *quare clausum fregit,* for entering upon a mill pond, which, with the soil under it, the plaintiff claimed to own, and taking and carrying away ice from the surface of the pond ; tried to the jury in the superior court on the general issue before *Hinman, C. J.*

Upon the trial the plaintiffs offered in evidence sundry deeds under which they claimed title to the *locus in quo,* which the court *pro forma* instructed the jury gave them no title to the soil nor exclusive right to the ice. The question arising on the deeds is fully stated in the opinion. It was conceded that the plaintiffs owned the water of the pond, but the defendant claimed that the soil was owned by the adjoining proprietors, of whom he was one, who as riparian proprietors owned to the middle of the stream.

The jury having returned a verdict for the defendant, the plaintiffs moved for a new trial.

*Child,* in support of the motion.

*Loomis* and *Curtis,* contra.

BUTLER, J. The objection that the action is misconceived, urged by the defendant, was not made in the court below, and for that reason has not been considered.

Three questions were distinctly made by the requests of the plaintiffs, and are presented by the *pro forma* negative charge of the court for our consideration. They are resolv-

able into two, namely, first, whether by the true construction of the deeds the plaintiffs had title to the *locus in quo;* and second, whether the plaintiffs had, as against the defendant, any right to the ice over the *locus;* and we have so considered them.

1. First, then, we are to enquire whether the plaintiffs had title as alleged. It is not material to a determination of this question that we should regard any of the deeds prior to that of J. D. Warren to Anness. Warren, as assignee in insolvency, had all the title of George E. Waring, and if, as the plaintiffs claim, Waring owned the land covered by the pond, and Warren's deed to Anness conveyed the title to the thread of the stream, the title is in the defendant and not in the plaintiffs. The question hinges therefore on the true construction of the deed of Warren to Anness, and whether it did or did not convey a title to the thread of the original stream.

The language of the deed in respect to the eastern boundary next the pond is "East by the pond." The pond is an artificial one, created by a dam across the stream. The dam was erected and the pond made soon after the town was settled, and more than two hundred years ago; and being near the centre of the town, and very valuable, will undoubtedly be kept up at the same point as long as water runs and the country is inhabited.

It is well settled that where land is bounded, in a deed, in general terms, on or by a river or stream not navigable, the grant extends to the centre of it; and that where so bounded on or by a natural pond, the grant extends to its low water margin only. But the law is not so well settled where the pond is artificial, made by the erection of a dam across a stream, and the expansion of it over the adjoining lands. There are a few cases in this country in which the court adopted the rule that where the grant is bounded on or by an artificial pond, and not expressly or by clear implication by the margin of it, the grant extends to the original thread of the stream as if no pond existed. A majority of the court are disposed to follow those decisions and adopt that rule. But it seems to me that the rule is an arbitrary one, and in a

majority of cases contrary to the popular understanding of the language and the intention of the parties; for where these ponds have existed for a long period, and will in all human probability exist as long as the country exists, it is going too far to assume that the parties actually contemplated a grant of the land under them, or to the thread of a stream which has ceased to exist at that point as such.· The margin of the pond is a plain visible boundary, and probably in nine cases in ten the one actually contemplated by the parties. Perhaps it is well enough to make the distinction and adopt the rule for the sake of uniformity, where there is nothing on the face of the deed, or in the condition of the subject matter of it, to indicate that the parties actually intended the margin as the boundary. But if there is anything in either indicating that such was or must have been their intention, I think the case should be treated as exceptional. Here I think there is such indication. It appears from the deed on which the requests and charge were predicated, that Warren held the whole property as trustee, and that he could not without a breach of trust part with the right to flow the *locus in quo*, for it would destroy the water privilege and seriously affect the value of the rest of the estate, as the grantee well knew. Yet, as Warren reserved no right to flow the land, if the deed is construed as claimed, he did in effect covenant that he would not convey the right to flow it to any other person; for he covenanted to warrant and defend the land against *all* claims. and of course *any such claim*, emanating from him. I think therefore that the parties must have contemplated the margin of the pond as the boundary, and that the defendant should be holden to that construction. But a majority of the court do not concur in such a view of the case, and the decision of the court is that the plaintiffs had no title to the *locus in quo*.

2. In relation to the second question, we are all of opinion that it must be answered affirmatively, and that the plaintiffs had an interest in the ice, and a right to have it remain where it was, which the law will protect. The defendant, it is conceded, could not have diverted the water, if liquid, in any

considerable quantity, and we do not think the rights of the parties were changed or affected by its temporary congelation. The injury in the particular case may be small, but we can conceive of cases where it might be serious.  Many of the mill ponds of the state, used in the grinding of grain and sawing of timber, are small and shallow, and often in the winter season when rain falls infrequently and the fountains are frozen, water is scarce, and any thing which further lessens it is a material injury.  Ice not only liquifies again and becomes available during winter thaws, but it retards, and if covered by a coating of snow, prevents deep freezing and a greater deprivation of the water.  We think it too much therefore to say as matter of law, that riparian proprietors may remove the snow and ice from mill ponds at pleasure, and as fast as they form, and for mercantile purposes.  That is the scope of the defendant's claim, and it can not be sustained; and for that reason a new trial is advised.

In this opinion the other judges concurred; except HINMAN, C. J., who, having tried the case in the court below, did not sit.