WILLIAM T. PEARSON and another *vs.* HENRY ROLFE.

HENRY ROLFE *vs.* HENRY T. PEARSON.

Penobscot.    Opinion August 4, 1884.

*Mill-owners.    Mill-dams.    Right of passage.    Waters.    Reasonable use.*

A mill-owner upon a floatable river is not under legal obligation to provide a public way, for the passage of logs over his dam, better than would be afforded by the natural condition of the river unobstructed by his mills.    The right of passage is to the natural flow of the river or its equivalent.

A mill-owner is not under legal obligation to furnish any public passage for logs over his dam or through his mills at a time when the river at such place, in its natural condition, does not contain water enough to be floatable if unobstructed by mills, although the river is generally of a floatable character.

Whenever a river, with mills upon it, is floatable, and the mill-owner and those who want to float logs past the mills are desirous of using the water at the same time, all parties are entitled to reasonable use of the common boon; the right of passage is the superior, but not an usurping, excessive or exclusive, right; the law authorizing mills puts some incumbrance upon the right of passage.

What is a reasonable use is a question of fact, and depends upon the size and nature of the stream, the extent and kinds of business upon it, and all other circumstances.

ON REPORT.

The first action is for trespass.    The writ dated August 31, 1880, alleged that the defendant at Oldtown, August 30, 1880, with force and arms wilfully, and without the consent of the owner let loose the plaintiffs' boom in the Penobscot river by reason whereof a large number of logs ran by the boom into the plaintiffs' mill-pond and the plaintiffs were put to great expense in sluicing the logs out of the pond.    *Ad damnum* one thousand dollars.

The second action is case.    The writ, dated September 18, 1880, alleges that the defendant on the first day of June, 1875, and various other times between that day and the date of the writ unlawfully erected, maintained and kept a dam across the Penobscot river at Great Works in Oldtown, and unlawfully omitted, neglected and refused to provide a suitable sluice or place of

passage for logs being driven down the river by the plaintiff and caused great loss, damage and detention to the plaintiff in his business of driving logs. *Ad damnum* five thousand dollars.

The two cases were submitted together to the law court to render such judgment as the rights of the parties require in each case ; damages, if any, to be assessed at *nisi prius*.

The cases were ably argued upon the law and facts by *Wilson and Woodward*, and *John Varney*, for William T. Pearson and Co. and by

*Chas. P. Stetson*, and *J. A. Blanchard*, for Rolfe.

It is common learning that the right of erecting and maintaining dams and mills upon a river which is navigable for logs, must be deemed as in subjection to the paramount right of passage of the public, and that all hinderances and obstructions to navigation, without direct authority from the legislature, are public nuisances. *Knox* v. *Chaloner*, 42 Maine, 150 ;. *Dwinel* v. *Barnard*, 28 Maine, 554, 567 ; *Moor* v. *Veazie*, 32 Maine, page 356 ; *Brown* v. *Chadbourne*, 31 Maine, 19. Angell and Ames on Water Courses, §554, note 2. (7th ed.)

That when the river is unlawfully obstructed, any individual who has occasion to use it in a lawful way, may remove the obstruction. Angell and Ames on Water Courses, § 563 ; *Treat* v. *Lord*, 42 Maine, page 557 ; *Arundel* v. *McCulloch*, 10 Mass. 70.

And that any person receiving special damage from such obstruction, may maintain an action therefor. *Brown* v. *Watson* 47 Maine, 161.

Applying these principles to the facts in these cases, we claim that Rolfe was justified in his action in removing the boom, and that he is entitled to judgment in the first named case, and that in the other case he is entitled to recover, as damages, the increased expense of getting his logs through.

But plaintiffs while admitting that the Penobscot river at this point is navigable, say that in season of drouth and at the time of the alleged injury, Rolfe could not have driven his logs by Great Works, in the river in its natural state, and therefore their detention of his logs, and their refusal to shut down their mills

and give him a passage for his logs, were not wrongful. We claim that Rolfe was entitled to have passage for his logs in the river, and the water as it then was, even if it be shown that logs could not have been driven down the river, in its natural state, at that time of drouth; that if the dams of plaintiff improve the river for driving logs, Rolfe could use that improved condition of the water for that purpose, in the same manner as he could the river in its natural state, and the same principles of law which would give him, as one of the public, the paramount right of navigation in the public highway applied to the river and the water as it then was, with plaintiffs' dams and mills upon it. This is an important question to be settled by this case; important as establishing for the future the rights of those having logs to be driven down the river in the summer season, and the rights of the owners of extensive mills below, requiring from time to time during the season, some seventy-five millions of feet of logs, for the supply of their mills.

The cases above cited, *Brown* v. *Chadbourne*, and *Treat* v. *Lord*, say that a river has the character of a navigable river although not navigable at all seasons of the year, and even if in its natural state it is so obstructed, by obstructions which could be removed, that logs could not be driven in it.

And the case of *Dwinel* v. *Barnard*, 28 Maine, 562, lays down the following principle: "Should a person obstruct the flow of the waters of the river or stream over their accustomed bed, so that they could not be used as formerly, for the purpose of boating or of floating rafts or logs, and should turn them into a new channel, he would thereby authorize the public to make use of them in the new channel, as they had been accustomed to use them in their former channel." Mr. Eddy, a witness for plaintiffs, and interested in the result of this suit, as much or in the same manner, as Pearson, says, that the river could be improved so that logs could be driven in case of drouth, if there were no dam and mills there, and that more convenient passage could be made for logs in the present works, but adds: "in severe drouth there is not water enough to drive logs there and run the mills too, one or the other must yield."

The character of the river being established as a public highway, Rolfe had a right to use it for the navigation of his logs, and to use the water as it then was, and to have the benefit of any improved condition of the river for navigation, made by the dams there. *Holden* v. *Robinson Company*, 65 Maine, 215.

The position which plaintiffs take in this case is not sound, because it is impracticable. It would make the navigation of the river subject to the will of the mill-owner, and to his opinion or the opinion of others, as to whether, at a particular season, long years past, logs could be driven down the river, in its natural state, at this point; — because it deprives the public of the improvements which might be made in the river, so that it would be navigable in cases of drouth, — because the amount of water which would have run in the river at the present time, if the dam was not there, must be a matter of conjecture, and entirely too uncertain for the determination of the rights of the public and those navigating the river.

The character of the river being established as navigable, as a public highway, the public have a right to use it at all times and seasons, and the adjoining owner cannot, by making improvements on the highway, deprive the public of the use of it.

A man improves the highway in front of his house — he cannot say to the traveler, to the public, — "You cannot drive over this highway, because at some time, before I improved it, you could not have driven over it, or could have driven over it with difficulty." He cannot say to the traveler — "You cannot drive over this highway which I have improved, unless you pay me for the use of it, or for the inconvenience you may occasion to me by using it."

PETERS, C. J. The controversy in these cases arises from a conflict between log-owners and mill-owners as to their respective rights in the use of the water at certain falls in the Penobscot river at West Great Works, in the town of Oldtown. Pearson represents mill-owners,— Rolfe represents log-owners. Pearson has mill structures upon his privilege, with such appendages as dams, sluices and booms. Rolfe had a quantity of logs in the

river which he was unable to drive over the dam at Pearson's mills, unless Pearson would shut down his mill-gates, thereby suspending his own business of manufacturing, until water enough should accumulate in his mill-pond to float the logs over. This Pearson refused to do, basing his refusal upon the allegation that the drift-way in the dam, without shutting down his working gates, afforded all the facility for floating logs by his mills that existed in the river at that place in its natural state,— as much as there would be provided his mills and all of his structures were entirely out of the way. Rolfe contends that the facts were otherwise, but further contends that Pearson, even if he represents the facts truly, having it within his power to furnish more water than the natural facility and flow, was under an obligation from his situation to do so.

The counsel for Rolfe contends that the doctrine of *reasonable use* applies; and that, if the river in its natural condition would not furnish a sufficient flow, Rolfe was entitled to the use of the river in its changed condition for his purposes. We think this position cannot be maintained. Our idea is that the doctrine of reasonable use does not apply when the river is *not* naturally floatable; but does apply when it *is* naturally floatable or log-navigable, when both parties can use the natural flow and desire to use it at the same time. We are well satisfied that, whenever logs cannot be driven over a particular portion of a fresh water river such as the Penobscot above the flow and ebb of the tide, while in its natural condition, such portion of the river is not at such time navigable or floatable, and that the use of the water at such time, and place, so far as he needs the same for his own purposes, belongs exclusively to the riparian proprietor. We think an examination of well settled principles, as illustrated by the decisions, affecting the respective rights of the parties in river easements and privileges, inevitably leads to such conclusion.

Rolfe, unquestionably, had the general right to use the river as a passage-way for his logs. All navigable waters are for the use of all citizens. In a technical sense at the common law, the Penobscot river would be regarded as navigable only so far as its waters flow and reflow with the tide. But it is navigable in fact,

or in a popular sense, or according to a common law of our own, above the reach of the tides. The reason of the old common law rule, the rule of the English courts, is the reason of the rule in this country. The germ of the doctrine is the same in both countries. We refit the rule to more extended and liberal applications, under the stimulating influences that arise from the wants and necessities of our business, the magnitude of our rivers, and the extensiveness of the internal and inter-state commerce of our country.

The Penobscot river at the place in question, as before intimated, was floatable only,— floatable, because capable of valuable use in bearing the products of the forests to markets or mills. A floatable stream is the least important of the classes of streams called navigable. Rolfe had the right to use the river so far as it was a floatable river, in such parts or places and at such times as it was floatable. He had the right to avail himself of its navigable capacity for floating logs. But only so far as it was navigable or floatable in its *natural condition*. It is the natural condition of a stream which determines its character for public use. And it must be its navigable properties in a natural condition, unaided by artificial means or devices. It is well settled in this state and elsewhere that, if a stream is not susceptible of valuable use to the public for floatable purposes, without erections for raising a head, it cannot legally be deemed a public stream, even though it might be easily converted into a floatable stream by artificial contrivances. *Wadsworth* v. *Smith*, 11 Maine, 278 ; *Brown* v. *Chadbourne*, 31 Maine, 9 ; *Treat* v. *Lord*, 42 Maine, 552 ; Wood, Nuis. (2d ed.) § 463, and cases. The log driver takes the waters as they run, and the bed over which they flow as nature provides. Nor has any person the right, unless upon his own land, or under legislative grant, to remove natural obstructions from the bed of a river in order to improve its navigation. This is clear from the same authorities.

On the other hand, what rights have the adjudged cases accorded to the riparian proprietor in merely floatable and non-tidal stream? It is settled in this state that he owns the bed of the river to the middle of the stream. He owns all the rocks

and natural barriers in it. He owns all but the public right of passage. The right of passage does not include any right to meddle with the rocks or soil in the bed of the river. If rocks are taken, the owner may sue in trespass for the act, or may replevy them from the wrong-doer. Gould, Waters, § § 77, 93 *a*, and note. *June* v. *Purcell*, 36 Ohio St. 396; *Ross* v. *Faust*, 54 Ind. 471; *Watson* v. *Peters*, 26 Mich. 508; *Braxon* v. *Bressler*, 64 Ill. 488. Stone cannot be quarried without compensation from the bed of a private stream for the purpose of constructing a public bridge over the stream. *Oberman* v. *May*, 35 Iowa, 89. The owner may maintain trespass *quare clausum* for an unlawful invasion of land covered by water. *Morris Canal Co.* v. *Jersey City*, 26 N. J. Eq. 294; *Walker* v. *Shepardson*, 4 Wis. 495; *Moor* v. *Veazie*, 31 Maine, 360. Ice formed upon a floatable fresh water stream, is the property of the riparian proprietors. *Wash. Ice Co.* v. *Shortall*, 101 Ill. 46; *Mill River Man. Co.* v. *Smith*, 34 Conn. 462; *Paine* v. *Woods*, 108 Mass. p. 173, and cases. See, for several pertinent matters, 19 Am. Law Reg. (N. S.) pp. 145, 337, and cases there cited and discussed.

The mill-owner occupies other vantage ground. His structures are legalized and protected by the statutes of the state. A part of the public right is granted to him, for a supposed gain which the public obtains through the use of mills. He is authorized to build dams and erect mills upon the privilege and to raise a head of water for his use. His stores of water are his property. A person who casts waste into his mill-pond to his injury is liable therefor. *Dwinel* v. *Veazie*, 44 Maine, 167. A log-owner is liable if he unnecessarily encumbers the pond of a mill-owner with his logs. The log-owner's general right is that of passage, not of rest. *Brown* v. *Black*, 43 Maine, 443. There may be, however, exceptions or qualifications to this. R. S., c. 42, § 8.

In the light of these principles governing the rights of the parties, how can it be admissible for the log driver to claim for his purposes more of the river than the natural flow or its equivalent? Can he claim a better passage than would be possible to him were there no structures upon the privilege? If he cannot,

without the land-owner's consent, erect dams himself to create a head for facilitating the driving of logs, can he impress into his service the use of dams lawfully erected for other useful purposes by other men? If he has no right to remove or interfere with natural obstructions, to the owner's injury, how can he inter-meddle with legally authorized artificial obstructions which do not deprive him in any respect of the ordinary and natural flow? Each is a legal property, the natural and the artificial obstruction. Neither necessarily impairs any subsisting legal right. The only obligation which the law lays upon the mill-owner is not to injure the river passage. He is not required to make it better.

The mill act declares that an owner may erect and maintain a water mill, " and dams to raise water for *working it.*" How can he have the water for working his mill, if others may take it without his consent for other uses? If others may take from him more than the natural flow, when and how often and in what quantities may it be thus taken? Is it to be a reasonable use? How much is a reasonable taking by one man of another's property without compensation? Where does the doctrine of mutual concession come in, if the mill-owner is to reap no advantages from the plan? Would not Pearson be permitted to remove his structures, leaving the river in its natural state? If he can do that, cannot he hoist his mill-gates at his pleasure for business purposes, allowing the water to pass his mills in manner and quantity equivalent, as near as may be, to its ordinary condition and natural flow?

Let it be borne in mind that the complaint against Pearson is not that he kept back the natural flow, but that he refused to keep it back, — that he would not shut down his gates and suspend his business in order to keep it back. The demand was that he should suspend his own sawing and shut down his mill-gates until the accumulation of water in the mill-pond might be enough to create a navigable flow through the public passage. It would be a curious legal spectacle to see a mill-owner mulcted for not allowing log-owners the use of his dam and mills to create, not a natural, but an unnatural, flow upon the river. It would be a different thing, however, if Rolfe asked for only

such a facility of passage as the river in its natural condition would have afforded.

The counsel for Rolfe invokes in his behalf the doctrine maintained by several cases, that, where one person improves the navigability of a stream, all other persons having the right to use the stream, may use it in its improved condition. That principle must be admitted. If the channel of a floatable stream is changed or deepened by riparian proprietors for the purpose of making its navigation less difficult, any person using the stream has the benefit of the improvements. Such a result is unavoidable. The same rule applies to a highway upon land. If a man improves a highway in front of his own land, a traveler may use the improved highway. He must do so, if he uses the way at all. He can no longer use the way as it was. But this doctrine cannot apply to the cases before us. Here the navigable character of the river has not been improved. The gist of the complaint against the mill-owner is virtually that he would not improve it, when he had the means and power of doing so at easy hand. Here the channel is neither deepened nor widened. The case here differs widely from any case that can be cited in affirmance of the doctrine contended for. Had Pearson improved the navigability of the river for his own use, he would have bestowed the same benefit upon others. But he intended no such improvements either for himself or others. *Holden* v. *Robinson Co.* 65 Maine, 215, is relied upon by counsel for Rolfe. An incidental remark in the opinion in that case was to the effect that a log-owner was entitled to the water raised by a mill-dam. But it was to get *down to* the dam, and not to get over or past it. That authority, therefore, is not in the least in our way. In coming *to* any mill-dam, logs must necessarily pass over the water as raised by the dam. *Dwinel* v. *Barnard*, 28 Maine, 554, is also relied upon, as approving the doctrine that if a new passage is *substituted* for an old one, the new one is open to the use of all. We entirely concur in that view. In such a case, no natural stream — in fact no stream — is left in the old channel. But in the case at bar, we are assuming for the purpose of argument, that the full natural stream is left. The

court,·in the case referred to, places its theory upon the fact that the flow of the waters was so changed "that they could not be used as formerly." Here, it is contended that they can be used as formerly without interfering with Pearson, and that the river, at the time in question, was allowed its natural and accustomed flow, or its equivalent.

The fact that it would be a convenience to the public to use more than a natural flow from the head of water raised by mill erections, cannot influence the question in the least. The extra stores of water collected by the mill-owner for his use, are his own. They could be taken by the state for the public for a compensation; or the state could authorize the owner to dispose· of their use for a toll. Gould, Waters, § 35; Cool. Con. Lim. * 592. The legal position espoused by the mill-owner in the cases presented for our decision, is sustained by the effect of the views entertained by the court in *Wadsworth* v. *Smith, supra,* and is emphatically and quite directly defended by the case of *Thunder Bay River Booming Co.* v. *Speechly,* 31 Mich. 336; authorities relied on by counsel for Pearson.

It will be seen that we have thus far discussed the relative rights of the parties upon the supposition that Pearson's structures and his management of them did not deprive Rolfe of as good a chance of passage as the natural stream would have afforded at the time and place. We do not affirm the fact to be so. We express no opinion upon any disputed fact. We give the rule upon which the facts are to be considered. It is said that the rule may not be a just one, because of the difficulty of observing the operations of nature after the erection of mill-dams. The objection is not formidable. Other evidence may be substituted. Proof of the general character of the river, of its volume and flow above and below the place in question, would be among other things an important matter. A jury would not encounter more difficulty than that which attends very many contested cases. At all events, the difficulty of proof does not ordinarily dispense with the necessity of proof.

Another difference of opinion exists between the parties upon the facts adduced. That is as to what their respective rights

may be in the use of the water when there exists a natural flow sufficient to make a floatable stream, but both parties need the water for their different purposes at the same time, and the use of the water by one injuriously interferes with its use by the other. In such a condition of things, as before expressed, the maxim or doctrine of reasonable use applies. If they cannot both enjoy the same thing at the same time, each must take to himself and concede to the other a reasonable use of the common boon. The right of passage is the paramount or superior right, and necessarily so from the very nature of things. It is a right to move on or by. The stationary obstacle must necessarily yield in order to give it a chance to go by. It is not an *exclusive* right. It is not a privilege of moving at all times, with any quantities, and without any delay, and under all circumstances. The two rights come in conflict. One does not destroy the other. Each influences the other. The legislature has surrendered some part of the public right to the mill occupiers for the supposed public good. The mill-owner must not materially and essentially prevent or delay the public passage.

The law authorizing mills necessarily puts some encumbrance upon the rights of passage.

In Cool. Torts, 583, the author says : " The reasonableness of the use depends upon the nature and size of the stream, the business or purposes to which it is made subservient, and on the ever-varying circumstances of each particular case. Each case must stand upon its own facts, and can be a guide in other cases only as it may illustrate the application of general principles. Such general rule should be laid down as appears best calculated to secure the entire water of the stream to useful purposes." The same doctrine is excellently presented by DICKERSON, J., in *Lancey* v. *Clifford*, 54 Maine, 487, and by RICE, J., in *Dwinel* v. *Veazie*, 50 Maine, 479. The want of space forbids quoting from the cases at much length. In the former it is said : "Each right is the handmaid of civilization ; and neither can be exercised without, in some degree, impairing the other. This conflict of rights, therefore, must be reconciled. The law furnishes a solution of this difficulty by allowing the owner of

the soil over which a *floatable* stream, which is not technically nagivable, passes, to build a dam across it, and erect a mill thereon, provided he furnishes a convenient and suitable sluice or passage-way for the public by or through his erections. In this way both these rights may be exercised without substantial prejudice or inconvenience." In *Dwinel* v. *Veazie, supra,* it is said: "To give either interest absolute prerogative would be destructive to both. Hence the rights of each must be so exercised as not unnecessarily or unreasonably to interfere with or obstruct the rights of the other. And such is the law."

In Gould on Waters, a new and excellent work, at section 110, it is said: "The rights of the public are not superior to private rights, in streams that are merely floatable, *to the same extent* as in rivers which are capable of more extended navigation. In the latter the public right extends equally to all navigable portions of the river. But the right of floatage is not paramount to the use of the water for machinery, and the rights of the public and those of the riparian owners are both to be enjoyed with a proper regard to the existence and preservation of the other. . . . In streams which are only floatable, the riparian owner is only bound not to obstruct its reasonable use for that purpose." To this the author appends a long list of citations. It is to be noticed that the author remarks that the right of floatage is not paramount to the use of the water for machinery. That is, not of such paramount character as to prevent the erection of dams, bridges, and flumes and the like, which do not prevent a reasonable chance for public passage. The right of passage is the dominant right, because it is a right that cannot be very well exercised unless the other right temporarily yields to it. But its use must not be usurping, excessive or unreasonable. Wood, Nuis. (2nd ed.) § § 464, 465, and cases. Cool. Con. Lim. (5th ed.) 731.

With these enunciations of opinion upon the legal questions presented, we think the cases need no further attention or consideration at our hands. While the report allows us to decide the facts, we think that duty should be performed by

a jury, if the parties cannot agree upon a referee or commissioner for the purpose, or cannot settle the question themselves.

The parties would act wisely to indulge a spirit of mutual forbearance and concession in these matters. In no other way are the embarrassments and difficulties, usually incident to such contentions, avoidable. The rule that governs some of their rights is a general and necessarily an indefinite one. Emergencies may often arise when the different interests will clash. Discreet words and acts are a better resort, in the first instance, than law-suits.

*Cases to stand for trial.*

DANFORTH, VIRGIN, LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.