HENRY N. FOSTER and another

*vs.*

SEARSPORT SPOOL AND BLOCK COMPANY.

Penobscot.    Opinion November 19, 1887.

*Waters.    Mill-owners.    Mill-dams.    Logs.*

The owners of mill-dams on floatable streams are required to furnish reasonably convenient facilities for the passage of logs. It would not be reasonable to require them to furnish such expensive locks or sluices as would enable large and loosely constructed rafts of logs to pass without being broken up.

The owners of mill-dams are not required to provide the same facilities for the passage of logs as existed before the erection of the dam.

ON motion to set aside the verdict. There were also exceptions in the case, which were not considered, a new trial having been granted on the motion.

An action of the case for damages caused by the breaking up of rafts of logs owned by the plaintiffs while passing through the defendant's dam across Piscataquis river at Howland.

The verdict was for plaintiffs for $847.99.

*John Varney* and *John A. Blanchard*, for plaintiffs.

The court will not disturb the verdict of the jury in cases of conflicting testimony, unless the result is so manifestly erroneous as to make it appear that it was produced by prejudice, bias or some improper influence or by mistake of the facts or law of the case. 36 Maine, 252; 40 Maine, 28; 59 Maine, 418; 58 Maine, 454; 67 Maine, 314.

Defendant in erecting that dam was bound to give the public

as good a channel for running rafts as there had been in its natural condition. *Parks* v. *Morse*, 52 Maine, 260 ; *Rolfe* v. *Pearson*, 76 Maine, 383 ; Gould on Waters, 138, 196, 765, and cases there cited.

*Wm. H. McCrillis and Charles P. Stetson*, for defendant.

WALTON, J.  We regard this as a very important case ; for if the law is as claimed by the plaintiff, it imposes upon mill owners a duty which it will be very difficult indeed if not impossible for them to perform.

It is claimed that the owner of a mill dam upon a floatable stream is obliged to provide a sluice through which large and loosely constructed rafts of logs may be run without being broken up.

We doubt whether the construction of such a sluice is practicable.   The evidence shows that when one of these rafts enters a sluice, the more rapid current of the water in the sluice draws the front logs away from the rear logs, and that when the front logs reach the less rapid current at the outlet of the sluice, their speed is suddenly checked, and the rear logs, which are then passing through the more rapid current of the sluice above, are driven against the front logs with such force that they will either go under or over them, and the raft be thus doubled up and broken to pieces.   We doubt whether it is practicable to construct a sluice that will avoid these results.   Unquestionably a lock may be so constructed.   But how an ordinary sluice, open at both ends, can be constructed that will avoid them, we are unable to understand.   The water in the sluice must inevitably flow more rapidly than the water in the pond above.   And when the front end of a long raft enters this more rapid current, what can prevent its being pulled away from that portion of the raft which still remains in the more sluggish water of the pond above?  And when the front end of the raft strikes the more sluggish current at the outlet of the sluice, and its speed is thereby suddenly checked, what can prevent the more rapidly moving logs behind from being driven under or over the logs in front?  We fail to see.  Certainly such a sluice can be constructed,

if constructed at all, only at very great expense, an expense, we believe, out of all reasonable proportion to any benefit that would be conferred upon the log driver.

It has never been decided in this state that such a responsibility rests upon the mill owner. It has been decided that he must furnish the log driver with reasonably convenient facilities for running his logs. But it has never been decided that he is obliged to furnish locks or sluices through which large and loosely constructed rafts of logs can be run without being broken up or the logs displaced. And we decline to place such an obligation upon him. We believe it would be unreasonable to do so. That to do so would place upon the mill owner a burden out of all proportion to any benefit that would be conferred upon the log driver.

The proof in this case is that for the express purpose of accommodating log drivers, the defendants had constructed in their dam a good and substantial sluice, thirty feet and four inches wide, and sixty-one feet and nine inches long, the descent in its whole length being only three feet and three inches. And it is admitted that the facilities thus provided are legally sufficient for running unrafted logs. But the plaintiff undertook to run his logs in rafts. These rafts were from twenty to twenty-two feet wide, and from one hundred to one hundred and fifteen feet long. And they were loosely constructed. Some of the logs had no fastenings, and were held in place only by the logs by which they were surrounded. The result was that in their passage the rafts were more or less broken up. The witnesses say that when the front logs entered the sluice they would be pulled away from the hind logs, and that when the front logs reached the outlet of the sluice, they would be driven to the bottom of the river, and their speed being thus suddenly checked, the hind logs would be forced on top of them; and in this way the fastenings would be loosened and the rafts more or less broken up. And it is for the delay and the cost of reconstructing the rafts that the plaintiff claims compensation from the defendants.

In support of this claim it is contended that a log driver is

entitled to the same facilities for running his logs after the erection of a dam as he had before; that if before the erection of a dam he could run rafts of logs without their being broken up, he is entitled to the same facilities after the dam is erected.

We can not sustain this proposition to its full extent. The right to erect a dam upon a non-tidal stream (and we are speaking of no others) is a clear statutory right. The legislature in creating it must have foreseen that its exercise would to some extent necessarily interfere with the use of such streams as highways. It is impossible to believe that the legislature intended that this newly created right should be burdened with the expensive if not the impossible obligation of providing for log drivers the same facilities for running their logs as they had before. If the legislature had so intended it would have said so. The statute imposes no such obligation. It is silent upon the subject. The court has by judicial construction engrafted upon the statute a condition in favor of log drivers to the extent of requiring mill owners to furnish reasonable facilities for the passage of logs; but it has never determined that it would be reasonable to require them to furnish locks or sluices through which large and loosely constructed rafts of logs may be floated without being broken up. We do not mean to say that it was not the duty of the defendants to prepare a sluice through which the plaintiffs' rafts of logs could be run. What we mean to say is that, in the opinion of the court, the sluice prepared by the defendants was all that could reasonably be required of them, and that they were not responsible for the breaking up of the rafts; and that the verdict against them, which holds otherwise, is clearly wrong.

In support of this conclusion, and for a more full discussion of the relative rights and duties of mill owners and log drivers, and the rules by which they are to be measured and adjusted, see *Pearson* v. *Rolfe*, 76 Maine, 380.

*Motion sustained, verdict set aside,*
*and a new trial granted.*

PETERS, C. J., DANFORTH, VIRGIN, FOSTER and HASKELL, JJ., concurred.