Argued August 11, decided October 6, 1908, modified on rehearing
February 16, 1909.

## TRULLINGER v. HOWE.

[97 Pac. 548; 99 Pac. 800.]

NAVIGABLE WATERS—NAVIGABLE STREAMS—OBSTRUCTIONS—DAMS.

1. Plaintiff, a riparian proprietor, may maintain a mill-dam across a navigable stream if it does not materially affect its use as a highway during the season when it may be so used in its natural condition, and another proprietor cannot retard the natural flow or store it by means of dams and discharge the accumulation, to plaintiff's injury.

SAME.

2. Where a mill-dam in a navigable stream is not unlawful *per se*, and is rightfully in the stream, if it is an obstruction because too high or because no passage for logs has been provided, defendant cannot dam the water above such mill-dam so as to prevent the operation of the mill thereby, but should take steps to abate the obstruction or recover damages for injury resulting therefrom.

SAME—RIPARIAN RIGHTS—EXTENT.

3. While the public's right of passage in a navigable stream is to some extent necessarily paramount to its use by riparian owners, it must be exercised without unnecessary interference of the reasonable use of the stream by riparian proprietors and the rights of each in the stream should be exercised with regard to those of the other.

WATERS AND WATER COURSES—DAMS—ACTIONS—EVIDENCE—OBSTRUCTION.

4. In a suit to enjoin the maintenance of splash dams above plaintiffs' mill-dam, the evidence *held* to show that the operation of plaintiff's mill and power plant was seriously interfered with by the manner in which defendant operated his dam.

NAVIGABLE WATERS—"NAVIGABLE STREAM"—WHAT CONSTITUTES.

5. A stream which had been successfully used for more than twenty years during the winter for floating logs to the market from a distance at least ten miles above plaintiffs' mill was a navigable stream at the mill, notwithstanding opinions of witnesses that the stream was not navigable.

SAME—OBSTRUCTION—NATURE—MILL-DAM.

6. Where no provision was made by an apron or sluiceway to pass logs around or over a mill-dam constructed in a navigable stream, and a rise of

four or five feet is required to pass the logs over the dam, whereas they could be floated on a depth of from two to three feet, so that more water was required to float them over the dam than on the natural stream, the dam was an obstruction.

SAME—OBSTRUCTION—PRESCRIPTIVE RIGHT TO OBSTRUCT.

7. Where plaintiffs never asserted the right to close a navigable stream or prevent its use for floating logs, but expressly claimed to have constructed their dam so that logs could pass over, they cannot claim a prescriptive right to unreasonable interference with navigation by the maintenance of the dam, even if a prescriptive right to obstruct a navigable stream can be acquired.

COSTS—COSTS ON APPEAL—PREVAILING PARTY.

8. Where plaintiffs appealed from a decree in a suit to restrain defendant from interfering, by the operation of splash dams, with plaintiffs' use of the waters of the river for power purposes, and on appeal it was decreed that defendant should be enjoined from operating his dams as to interfere with plaintiffs' use, the trial court having held that plaintiffs' right to use the stream was inferior to the right of navigation, plaintiffs prevailed on the main issue, and were entitled to costs.

NAVIGABLE WATERS—RETARDING FLOW—DAMS.

9. Where defendant's use of splash dams in a stream for the purpose of floating logs had been such as to retard the natural flow of the water, and to materially interfere with the continuous operation of plaintiffs' mills by power afforded by the stream, and also to injure plaintiffs' mill pond and races by the deposit of dirt and debris resulting from the sudden discharge of the accumulated water, plaintiffs were entitled to an injunction against such continued use of the dams, though defendants were entitled to accumulate and discharge water for navigation purposes to an extent not injurious to plaintiffs.

APPEAL AND ERROR—DETERMINATION OF CAUSE—REVERSAL—REMAND.

10. Where, in a suit to restrain defendant from interfering with the natural flow of a river by the operation of splash dams injurious to plaintiffs' water power, the pleadings and evidence were directed mainly to the question whether plaintiffs' dam was an unlawful obstruction to navigation, and as such should be removed, and not to the manner in which it could be modified or changed so as not to interfere with the floating of logs, the extent to which such dam should be modified would not be determined on appeal, but the case on reversal would be remanded for further proceedings.

From Yamhill: WILLIAM GALLOWAY, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit to restrain defendant from interfering with plaintiffs' use of the water of the North Yamhill River, for power purposes, by operating splash dams thereon. Plaintiffs are riparian owners, and have a gristmill and light-plant at or near the town of North Yamhill, which are operated by water diverted from the stream by means of a dam and race. The mill has been so operated for more than 40 years and the light-plant

for more than three years. Defendant has constructed a sawmill at Carlton, four or five miles below on the stream, and is the owner of a large tract of timber at the headwaters, above plaintiffs' mill. In 1905 and 1906 he constructed two large dams in the mountains, 12 or 14 miles above plaintiffs' mill, one across the main stream and the other across Fairchile Creek, a tributary thereof, by which he accumulates large volumes of water, which he suddenly releases, at his pleasure, to facilitate the floating of logs down the stream. Plaintiffs complain and allege that, by so retarding the natural flow of the stream, defendant interferes with its use by them for power purposes, and the sudden release of the water fills their race with dirt and debris, washes down logs on, and injures, their dam, and fills their mill pond, thereby seriously impairing their use of the water for power purposes. Defendant denies the injury complained of, and alleges that the North Yamhill River for some miles above plaintiffs' mill is a navigable stream for floating logs and products of the forest, that plaintiffs' dam is an unlawful obstruction thereof, and that the use of the splash dams, in the manner complained of, is necessary to enable defendant to float logs over such obstruction. Defendant had decree in the court below, and plaintiffs appeal.

REVERSED: DECREE RENDERED.

For appellants there was a brief with oral arguments by *Mr. Samuel B. Huston* and *Messrs. McCain & Vinton.*

For respondent there was a brief over the names of *Messrs. Williams, Wood & Linthicum, Mr. R. L. Conner* and *Mr. Walter S. Asher*, with oral arguments by *Mr. C. E. S. Wood, Mr. Conner* and *Mr. Asher.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The testimony of both parties was directed, in part, to the point whether the North Yamhill River at or above plaintiffs' mill is a floatable stream, and whether

plaintiffs' dam is an unlawful obstruction therein. But the determination of these questions is not really necessary to a decision of the issues. If the stream is navigable or floatable, it is so only during the winter months, and the plaintiffs, as riparian proprietors, have a right to maintain a dam across it for their use, provided it does not materially affect or abridge the use of the stream as a highway at such times. as in its natural condition is may be so used. Gould, Waters, § 110; *Hallock* v. *Suitor*, 37 Or. 9 (60 Pac. 384); *Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178 (38 Am. Rep. 407); *Connecticut River Lum. Co.* v. *Olcutt Falls Co.*, 65 N. H. 290 (21 Atl. 1090: 13 L. R. A. 826); *A. C. Conn Co.* v. *Little Suamico Lum. Mfg. Co.*, 74 Wis. 652 (43 N. W. 660); *Parks* v. *Morse*, 52 Me. 260. And defendant has no right to interrupt or retard the natural flow of the water, to plaintiffs' injury, or to store it, by means of dams and reservoirs, and suddenly discharge the accumulation to their damage. Gould, Waters, § 209; *Kamm* v. *Normand* 50 Or. 9 (91 Pac. 448: 11 L. R. A. (N. S.) 290); *Slingerland* v. *International Contracting Co.*, 169 N. Y. 60 (61 N. E. 995: 56 L. R. A. 494); *Thunder Bay River Booming Co.* v. *Speechly*, 31 Mich. 336 (18 Am. Rep. 184). Nor is defendant justified in so using the waters of the stream, even if plaintiffs' dam is, to some extent, an obstruction to navigation. It is not *per se* a nuisance or unlawful structure. It is rightfully in the stream, and, if an obstruction at all, it is because it is too high, or proper means have not been provided for the passage of logs over it. If this is so, defendant should proceed, in a proper manner, to have it abated or rely upon an action for damages, if injured thereby. He cannot accumulate large volumes of water above the dam, and by suddenly releasing it send down immense floods, depositing dirt and debris in plaintiffs' race, and preventing its use for power purposes. The right of the public to use a navigable or floatable stream in its natural condition is not

paramount to the right of a riparian owner to construct dams therein and use the waters for power purposes, so long as he does not materially affect or abridge the public right. The rights of each must be exercised with due regard to the existence and preservation of the rights of the other. The right of passage is, to some extent, necessarily the dominant right, because it is the right to move on or by. It, in the nature of things, cannot be exercised unless the other temporarily yields to it, but it is not an exclusive right, and must not be usurping, excessive, or unreasonable. It must be exercised without unnecessarily interfering with the riparian proprietor, and as modified by his right to make a reasonable use of the stream for his own purposes. *Pearson* v. *Rolfe,* 76 Me. 380; *White River Log Co.* v. *Nelson,* 45 Mich. 578 (8 N. W. 587, 909; *Middleton* v. *Flat River Booming Co.,* 27 Mich. 533; *Buchanan* v. *Grand River Log Co.,* 48 Mich. 364 (12 N. W. 490); *Foster* v. *Spool and Block Co.,* 79 Me. 508 (11 Atl. 273). If, therefore, the operation of defendant's splash dams has been such as to materially injure or interfere with plaintiffs' use of the waters for power purposes, they are entitled to relief. Upon this point there is practically no conflict in the testimony. The reservoir above defendant's dam in Fairchile Creek has a capacity of about 5,000,000 cubic feet of water, and that in the main stream, a short distance above the mouth of such creek, about 1,250,000. The method of operating these dams is to close the gates and retard the flow of the water until the reservoirs are filled, and then to suddenly open the gates, so that the accumulation of water from both dams will reach the mouth of Fairchile Creek at the same time, thereby raising the water at that point from six to eight feet, and at plaintiffs' mill, 10 or 12 miles below, from 16 to 24 inches above its natural stage. The waters so discharged necessarily rush down the stream with great violence, eroding banks, and carrying large quantities

of mud and debris, which is deposited in sluggish places and especially in plaintiffs' mill pond and race, where the flow is retarded by their dam. The dams of defendant were both first operated in the fall of 1906, and continuously from that time until the trial of this suit in January, 1907, often six or eight times a day.

Plaintiff D. P. Trullinger testifies that, prior to the operation of the dams, there was no interference with his power, except occasionally from backwater, and during extremely dry seasons. But since the construction of the dams the race has filled up with mud and debris, and there has been a shortage of water. Plaintiff Carl S. Trullinger says that he has been familiar with the mill and its operation practically all his life, and for some time has been in charge of the mill and light plant; that before defendant's dams were put in there was no serious trouble in the operation of the mill or light-plant for want of water, but since that time from 12 to 36 inches of dirt and debris has been washed in the race, thereby interfering with the flow of the water therein, and there has been repeated shortage of water while defendant's reservoirs were being filled. This testimony is substantially undisputed, and shows that the operation of plaintiffs' mill and power plant has been seriously interfered with by the manner in which defendant has operated his splash dams. This is of itself sufficient to dispose of the case and entitle plaintiffs to relief. We should perhaps stop here; but, in view of the scope the litigation has taken, it may not be improper to indicate briefly our views on some other questions.

It is claimed by plaintiffs that the North Yamhill River at and above their mill is not a navigable or floatable stream. We had occasion in the recent case of *Kamm* v. *Normand*, 50 Or. 9 (91 Pac. 448: 11 L. R. A. (N. S.) 290), to define such a stream, and the respective rights of the public and riparian owners thereon. Within the rule announced, the plaintiffs' position cannot be

sustained. Without going into an exhaustive examination of the testimony, it is sufficient that it shows that for at least 10 or 12 miles above plaintiffs' mill the stream has been successfully used during the winter season for floating logs from the mountains to the mills and markets below for more than 20 years. Plaintiff D. P. Trullinger himself testifies that it was so used from 1880 to 1887 and since that time, that it had been used for running logs before the construction of his present dam, and that he built it "so logs could go over it." There are many other witnesses who testified to similar use of the stream. Indeed, most, if not all, the witnesses who testified that in their opinion the stream is not navigable or floatable, either on direct or cross-examination, say that it has been so used successfully, and this fact is more valuable as evidence of the character of the stream than their opinions.

Defendant claims that plaintiffs' dam in its present condition is an unlawful obstruction to the floating of logs, and we are inclined to think there is some merit in this contention. The dam is constructed of brush, logs, and stone, and is 4 feet high and 60 feet long, with a perpendicular breast on the down-stream side. No special provision, such as an apron or sluiceway, is provided for the passage of logs. It requires, according to the testimony of both plaintiffs, a rise of four or five feet in the river for logs to pass over the dam, while the evidence shows they will float and can be successfully run in the stream on a depth of water of from two to three feet. It therefore requires more water to carry logs over the dam than to float them in the stream, indicating that the dam is an obstruction. Plaintiffs say, however, that they have a right by prescription to maintain the dam at its present height, and in its present condition, even if it does interfere with navigation. It is doubtful whether a right to maintain an obstruction to navigation in a natural stream can be so acquired.

53 OR.—— 8

It is true it has been held that the right of the public
to a highway on land may be lost by non-user. *Grady
v. Dundon,* 30 Or. 333 (47 Pac. 915) ; *Bayard v. Stand-
ard Oil Co.,* 38 Or. 438 (63 Pac. 614). But such a high-
way is either established by, and under the control of,
public officers, who are charged with the duty of main-
taining and keeping it open for the public, and who may
lawfully vacate it. If they suffer the highway to be
entirely closed or obstructed for a period of time pre-
scribed by the statute of limitations, there is reason for
holding that the right of the public to use the highway
has been lost. A navigable or floatable river or stream,
however, is of common right a highway by nature. It
is not created or established by any governmental agency,
nor can it be abandoned or discontinued by such agency.
It is therefore doubtful whether the right to impede or
interfere with the navigation can be acquired by pre-
scription or adverse user. *Collins v. Howard,* 65 N. H.
190 (18 Atl. 794) ; *State v. Company,* 49 N. H. 240 (6
Am. Rep. 513) ; *Woodruff v. North Bloomfield Gravel
Mining Co. et al.* (C. C.), 9 Sawy. 441 (18 Fed. 753) ;
*People v. Gold Run Ditch & Mining Co.,* 66 Cal. 138 (4
Pac. 1152: 56 Am. Rep. 80) ; *Stokes & Smith v. Upper
Appomatox Co.,* 3 Leigh (Va.), 318; *Rhodes v. White-
head,* 27 Tex. 304 (84 Am. Dec. 631. But, however this
may be, plaintiffs never have asserted the right to close
the stream or prevent its use for floating logs. On the
contrary they have recognized the public easement, and
intended to construct their dam "so logs could go over
it." They are, therefore, not in a position to claim the
right by prescription to unreasonably interfere with
navigation. They may, of course, maintain a dam for
the purpose of diverting water for milling or manufac-
turing purposes, so long as they do not injure other pro-
prietors or unreasonably interfere with the public ease-
ment. The respective rights of mill owners and loggers
in floatable streams is clearly defined by Mr. Chief Jus-

tice PETERS in *Pearson* v. *Rolfe,* 76 Me. 380, and the
parties to this litigation should have no difficulty in
adjusting their differences in accordance with the prin-
ciples announced by him and in this opinion.

The decree of the court below should be reversed, and
one entered here to restrain and enjoin defendant from
so using his splash dams as to interfere with the use of
the waters of the stream by plaintiffs for power purposes.

REVERSED : DECREE RENDERED.

Decided February 16, 1909.

ON PETITION FOR REHEARING.

[99 Pac. 800.]

MR. CHIEF JUSTICE BEAN delivered the opinion.

The principal object of this suit as disclosed by the
complaint, was to obtain a decree restraining the defend-
ant from interfering, by the operation of his splash
dams, with plaintiffs' use of the waters, in the North
Yamhill River, for power purposes. The questions
whether the stream is navigable or floatable, whether
plaintiffs' dam is an unlawful obstruction therein, and
the respective rights of the public and riparian owners
were issues tendered by the defendant in his answer,
and are incidental to the main purpose of the suit. The
court below held that the stream, from the splash dams
of defendant to its mouth, is a navigable and floatable
stream, and a public highway, and that the right of
plaintiffs to maintain a dam therein for power purposes
is inferior and subject to the right of navigation; that
plaintiffs may maintain and operate such a dam so long
as it does not interfere with the use of the stream as a
public highway, but that the defendant has a right to
operate his splash dams in the manner complained of,
subject only to answer in damages to any riparian owner
injured thereby, thus practically denying the relief
sought. From this decree the plaintiffs appeal, and on

the hearing here it was decreed that defendant should be enjoined and restrained from so operating his dams as to interfere with the use of the water by plaintiffs for power purposes. Plaintiffs, therefore, prevailed in this court on the main issues in the case, and are entitled to their costs.

It is suggested, however, that in order to put an end to the controversy between the parties, the court should determine in this suit the extent to which defendant may use his splash dams, to facilitate the floating of logs in the stream, without being liable to riparian proprietors therefor, and whether plaintiffs' dam is an unlawful obstruction to navigation, and, if so, the extent to which it should be lowered or otherwise modified, so as not to interfere with the floating of logs over it. The law on the first point is, we think, sufficiently indicated in *Kamm* v. *Normand,* 50 Or. 9 (91 Pac. 448: 11 L. R. A. (N. S.) 290, and the opinion heretofore filed in this case. The application of this rule can be made only to concrete cases, as they arise. We hold that the use of the splash dams by defendant, as disclosed by the testimony, has been such as, not only to retard the natural flow of the water, thus interfering materially with the continuous operation of plaintiffs' mills, but also to their injury by depositing dirt and debris in their mill pond and races, by the sudden discharge of the accumulated water, and plaintiffs are therefore entitled to an injunction against such use of the dams, but in the nature of things it would be impossible to state in a decree what quantity of water defendant may accumulate above his dams, and suddenly discharge, without injury to plaintiffs. All the court can decree is that under the case as made the manner in which defendant has heretofore used the dams is injurious to plaintiffs.

Upon the other point it is sufficient to say, as stated in the former opinion, that on the record before us we are inclined to think the power dam of plaintiffs, in its

present condition, is an unreasonable interference with navigation, and consequently it should be lowered or an apron or sluiceway provided for the passage of logs, or the dam modified in some other way, so that it will not materially interfere with the passage of logs over it. But we cannot safely determine, under the evidence of this case, how much it should be lowered, or what means should be provided for the purpose indicated. The evidence and pleadings were directed mainly to the question whether the dam is an unlawful obstruction to navigation and as such should be removed, and not to the manner in which it can be modified or changed so as not to interfere with the floating of logs. It is probable that if we should undertake this question on the record before us, we should do an injury to one or the other of the parties. In order, however, that the controversy may be finally and speedily determined at the least expense to the parties, it is thought proper to remand the cause to the court below, with directions to ascertain and determine the extent, if any, to which the dam interferes with the navigation of the stream, and what change or modification, if any, should be made therein.

MODIFIED: REMANDED WITH INSTRUCTIONS.