Argued June 20, reversed and remanded July 30, rehearing denied September 10, 1918.

## GASTON, TOWN OF, v. THOMPSON.

### (174 Pac. 717.)

**Statutes, Subjects and Titles.**

1. Section 5126, L. O. L., as to persons having the right to water privilege not being required to construct or keep in repair any bridge across any mill-race, etc., being a part of an act of territorial legislature entitled "An act fixing the rate of toll for grinding," is of no force, in view of Enabling Act, Section 6, as to every law embracing but one subject, expressed in its title.

> [As to when the title of a statute embraces but one subject and what may be included thereunder, see note in 79 **Am. St. Rep.** 456.]

**Constitutional Law—Police Power of State.**

2. The use of all property is subject to the general police power of the state, to be exercised either directly or through subordinate agencies to whom the state may intrust the exercise of that prerogative.

**Municipal Corporations—Police Power—Control of Property.**

3. Act of 1893 (Section 3229, L. O. L.), conferred upon cities and towns incorporated under it general police power to regulate the use of private property, and a mill constructed without license before incorporation of town, in what was then a county road, and which is now maintained along and across a street, is no exception.

Highways—Encroachment—Mill-race.

4.   From statutes requiring the owner to bridge mill-races where they cross a county road there may be inferred authority for passing laterally over such roads, but not for going along them longitudinally.

Highways—"Nuisance Per Se"—Mill-race.

5.   The admitted fact that a mill-race occupies a portion of a highway longitudinally makes it a nuisance *per se*, at common law, in the absence of any authority for its being there.

Statutes—Amendment by Reference to Title Only.

6.   Statute of February 21, 1913 (Laws 1913, p. 136), granting to the town of Gaston exclusive control over county roads within its corporate limits, cannot, in so far as it attempts to amend the general law, be considered, since it does not set out the part of the statute as amended, as required by Article IV, Section 22, of the Constitution.

Municipal Corporations—Control of Streets—County Roads.

7.   Statute of February 21, 1913 (Laws 1913, p. 136), amounted to an offer on the part of the state to surrender to the town of Gaston the control over county roads within its corporate limits and initiative charter (April 14, 1914), by which the town assumed control over all public parks, etc., reasonably included what was formerly the county road in question, and operated as an acceptance of the offer.

Municipal Corporations—Control of Streets—County Roads.

8.   A mill-race constructed without license and before incorporation of the town of Gaston in what was then a county road, whether a nuisance or not, is subject to reasonable police regulation, after inclusion within corporate limits of said town.

Injunction—Violation of Ordinance—Remedy at Law.

9.   Defendant, maintaining a mill-race within corporate limits of town of Gaston, contrary to its police regulations, being a nonresident, so that the legal remedy provided by ordinances is insufficient to work out obedience, relief will be granted in equity.

Municipal Corporations—Control of Streets.

10.   Requiring defendant to keep mill-race maintained along a street of plaintiff, to be covered with planks sufficient for ordinary travel, is a reasonable exercise of the police power committed to plaintiff by statute of 1893 (Laws 1893, p. 119), and reasserted in initiative charter (April 14, 1914), and is properly classified as local, special and municipal legislation, under Article IV, Section 1a, of the Constitution, reserving initiative power to voters.

Municipal Corporations—Control of Streets—Scope and Authority.

11.   The existence of an open mill-race in the principal thoroughfare of a town primarily affects the local situation, and is within scope of authority of cities and towns, under Article XI, Section 2, of the Constitution, empowering the legal voters to enact and amend their charters.

From Multnomah: EDWIN V. LITTLEFIELD, Judge.

Department 1.

The town of Gaston, a municipal corporation in Washington County, brings this suit against the defendant as the owner of a mill-race, to enjoin him from operating the same within the town limits without maintaining upon it a substantial covering. It alleges its first incorporation in December, 1911, under the general law of the state on that subject, and that by the initiative a new charter was enacted on April 14, 1914. The complaint informs us that prior to its first incorporation the County Court of Washington County regularly established County Road number A–185; that it is within the confines of the town and "a portion thereof runs east and west and the remainder north and south, within the boundaries of said town." It further appears that the legislative assembly of the state, by the act of February 21, 1913, granted to Gaston "exclusive control and jurisdiction over all county roads within its respective corporate limits" and declared the same to be streets.

It is said that the portion of the road running east and west is known as Mill Street, and the part running north and south is called Front Street. The pleading discloses that prior to the first incorporation of the town a milling corporation, after securing rights of way over certain private property, constructed a mill-race which, so far as this case is concerned, runs along Mill Street easterly to the point where it turns into Front Street, and thence diagonally across the latter thoroughfare; and that so far as it is within the former county road, now constituting the two streets, the same was constructed without license or authority. The ditch is located about five feet south of the center line of Mill Street and crosses Front Street at an angle of about forty-five degrees. According to the complaint,

it is about ten feet wide and eight feet deep, having a continuous flow of water therein, varying from four to six feet in depth, and has been maintained and operated by the defendant since prior to the first incorporation of the town.

The amended charter, among other things, gave the council power

"to punish interference with water ditches and pipes and the water therein, mill-races, drains and sewers and appurtenances thereof, and regulate and require the same to be kept in repair, bridged and in condition for travel thereover at the expense of the owner, whether the same be owned by the town, private individuals or corporations, and to revoke any license or franchise held by any private individual or corporation for failure so to do, and to punish such failure by fine and imprisonment."

The plaintiff says in effect that on July 5, 1916, in pursuance of the charter provision just quoted, the council enacted and the mayor approved

"An ordinance making it unlawful to maintain a mill-race or water ditch without bridging and covering the same in the manner provided herein and providing a penalty for violations of the provisions hereof."

It required every person, firm or corporation maintaining such a ditch or mill-race in a street in the town to provide the same with a suitable and substantial covering of planks, spikes and stringers, under the supervision and subject to the approval of the council. It declared that after August 10, 1916, any person violating the ordinance should be subject to a fine; that every day of continuance should be deemed a separate offense, etc. It is stated substantially that immediately after approval of the ordinance a copy was delivered to the defendant and that he has actual knowledge of the terms and requirements thereof, notwith-

standing which he continues to maintain and operate the race, the entire length thereof, without any cover on the same, all in disregard and violation of the ordinance mentioned. Further, it is averred that on April 25, 1917, the council adopted a resolution the essence of which is:

"That the existence of the race without a covering constitutes, and the same is hereby declared a nuisance."

The complaint says:

"That the defendant is a nonresident of the town of Gaston, Oregon, and is not within the jurisdiction of said town or the officers thereof and does not go within the said town, and the officers of said town are without power to enforce said ordinance by criminal prosecution for violation thereof."

It is charged also that the open race obstructs travel over that part of the streets occupied by it and is a dangerous menace to the safety of the public which has occasion to use the streets, and that by reason of the defendant's refusal to cover the same as required by the ordinance, the streets are obstructed and the plaintiff may, by reason of accident and injury resulting therefrom, be required to respond in damages. The prayer is for a decree enjoining the defendant from operating the race without a cover thereon.

That the road was laid out and established legally and that the mill-race in question was constructed in the road are both admitted by the answer, but it is denied that the race was dug in the road without license or authority. The ownership of the race is admitted, but the defendant claims to have leased the same to a tenant who operated it subsequent to August 8, 1916. He also admits the reception of a copy of the ordinance. He admits living in Portland. Other-

wise the complaint is denied. The defendant avers that prior to December 6, 1911, the date of the first incorporation of the town under the general law, his predecessors in title operated a flouring-mill and the mill-race and kept the same in good repair for the accommodation and use of the public and that on January 1, 1900, he purchased the same and operated it until August 8, 1916, when he leased it to a tenant to be carried on according to the laws of Oregon relating to the operation and building of flouring-mills, and that the tenants covenanted with him to keep the property, including the race, in good repair. He also says that as a compromise of the dispute between himself and the town it was agreed that he should construct a bridge over the ditch where it crosses County Road A–185 in Washington County and should build a three-board fence along the race where it runs along the road, all of which he carried out at an expense of $125. Finally it is alleged that upon August 8, 1916, he leased the property to some tenants who operate the mill and race and are keeping them in good repair.

The reply traverses the answer in material particulars, especially as to the alleged compromise. A supplemental answer was interposed, setting up a lease to another tenant, in substantially the same terms as the first, and that was denied by the supplemental reply. The Circuit Court dismissed the suit after a hearing and the town appeals.    REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Henry T. Bagley* and *Mr. Lotus L. Langley,* with an oral argument by *Mr. Bagley.*

For respondent there was a brief over the names of *Mr. Plowden Stott* and *Mr. John T. McKee,* with an oral argument by *Mr. Stott.*

89 Or.—27

BURNETT, J.—The chronology of events involved in this litigation may be thus set down: first, the admitted regular establishment of the county road; next, the digging of the mill-race; then the incorporation of the town under the general law of 1893; and, finally, the enactment of a new charter by the initiative process, containing the excerpt already quoted. Under the general law by virtue of which the plaintiff was first incorporated it had a right

"to exercise any and all police regulations concerning the public morals, public safety, public health and public convenience of the inhabitants of any such city or town": L. O. L., § 3229.

In addition to the power assumed by the initiative charter as stated, that instrument gave the council power "to prevent and remove nuisances and to declare what shall constitute the same." (Section 15.) By Section 1 the town was awarded the power

"to sue and be sued, defend and be defended, and plead and be impleaded in all courts of justice of the State of Oregon and of the United States in all actions, suits and proceedings whatever; to purchase, hold, own, lease and acquire and possess by purchase, gift or otherwise, both real and personal property within said town for public buildings, public works and improvements and may and shall have the right of possession and control of all public parks and all tracts of land within the limits hereinafter described, which have heretofore and may be hereafter dedicated, or in whatsoever manner obtained, for public purposes."

1, 2. The defendant urges as a defense the statute codified in Section 5126, L. O. L., reading thus:

"Any person or persons having the right to a water privilege shall not be required to construct or keep in repair a bridge or bridges across any race convey-

ing water to or from his or their mill on any road or roads.''

This contention is without foundation for the following reason: The section was part of an act of the territorial legislature entitled ''An act fixing the rate of toll for grinding.'' This legislation was had under the authority of the congressional act of August 14, 1848, entitled, ''An act to establish the territorial government of Oregon.'' The last sentence of Section 6 of the enabling act reads thus:

''To avoid improper influences, which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title.''

No proper reasoning can include in a title ''fixing the rate of toll for grinding'' an exemption from bridging a mill-race. So far as the latter provision is concerned it is of no force or effect and nothing can be claimed by the defendant under its provisions. Moreover, the use of all property whatever is subject to the general police power of the State, to be exercised either directly or through subordinate agencies of the government to whom the state may intrust the exercise of that prerogative.

3–5. The act of 1893 conferred this authority upon cities and towns incorporated under it and the mill-race in question is not exempt from this delegated power. Although the defendant denies that the race was constructed without authority of the County or Circuit Court of Washington County, yet no license from either of those tribunals appears in the evidence. Indeed, no statutory sanction can be found vesting in any court the prerogative of allowing a private concern to construct a mill-race in a county road. From statutes

requiring the owner to bridge such water-ways where they cross a county road we may infer the authority for thus passing laterally over them, but not for going along them longitudinally. The result is that the ditch in question is in the county road solely by sufferance and is all the more subject to reasonable police regulation. The admitted fact that it occupies a portion of the highway longitudinally makes it a nuisance *per se* at common law in the absence of any authority for its being there: Joyce on Nuisances, § 214; 13 R. C. L. 186; *Milarkey* v. *Foster,* 6 Or. 378 (25 Am. Rep. 531); *Roseburg* v. *Abraham,* 8 Or. 509; *Van Buskirk* v. *Bond,* 52 Or. 234 (96 Pac. 1103).

6, 7. The statute of February 21, 1913, granting to the town the exclusive control over county roads and declaring the same to be streets is in effect an attempt to amend the general law providing for the incorporation of cities and towns so as to affect only the town of Gaston. In that aspect it cannot be considered because, for instance, it does not set out the part of the statute as amended: Constitution, Art. IV, § 22. The most that can be said of this legislation is that it amounted to an offer on the part of the State to surrender to the municipality in question the control over the county road, but the town was not bound to accept the same. In the initiative charter, however, we find that the town assumed "control over all public parks and tracts of land within the limits hereinafter described, which have been heretofore or may be hereafter dedicated, or in whatsoever manner obtained, for public purposes." This language reasonably includes what was hitherto the county road and operated as an acceptance of the offer of the State in the act of February 21, 1913.

8. Whatever may be said, here is an open water-way within the limits of the town, more or less affecting

the inhabitants thereof. It obstructs travel along a public highway over which the city rightfully assumed jurisdiction. Independent of whether the race is a nuisance or not, it is subject to reasonable police regulation. A planing-machine is not a nuisance, yet we find it required that its knives shall be protected by guards, to prevent injury to the attendant workmen. An automobile is not a nuisance, but the statute demands that it carry lights at night. Many other instances might be pointed out as illustrative of the exercise of the police power for the safety and convenience of the public, all at the expense of the private owner. He takes and uses his property subject to the right of the State or its duly constituted agencies to regulate and control his use of it, in compliance with reasonable rules designed for the safety and convenience of the public. The cases cited by the defendant to excuse him from the expense of covering the ditch are instances in which the rights sought to be regulated were acquired before the establishment of the passageway. This distinction is pointed out by Mr. Justice MOORE in *Mutual Irr. Co.* v. *Baker City,* cited below. Besides obstructing the travel along the county road in question, now a street, a race of the kind, without a covering, is more or less a menace to the safety of children, who are liable to fall into the same and be drowned.

9. It is admitted that the defendant is not within the city limits and that he resides in the City of Portland. In his absence from the town of Gaston he is not subject to arrest under the city ordinances and the authority of the town over his property cannot be thus enforced. In other words, its legal remedy provided by its ordinances on the subject is not enforceable and is insufficient to work out obedience to its police regula-

tions.   The town has not a plain, speedy or adequate
remedy at law.   Acting under the initiative charter,
it has proclaimed by resolution that the race in ques-
tion is such an annoyance to the public as brings it
within the definition of the term "nuisance."   This
would not, however, exonerate it from proof thereof
unless the pleadings had admitted, as they do, enough
facts on which the court can draw the legal conclusion
that it constitutes a common-law nuisance.

In *Mugler* v. *Kansas,* 123 U. S. 623, 678 (31 L. Ed.
205, 8 Sup. Ct. Rep. 273), the court had under con-
sideration the thirteenth section of an act of the State
of Kansas declaring, among other things, that all
places where intoxicating liquors were manufactured,
sold, bartered or given away in violation of the act
should be common nuisances.   It was contended that
equity had no jurisdiction to enforce that provision
without a previous judgment at law.   After quoting
from 2 Story's Eq., Sections 921, 922, Mr. Justice
HARLAN used this language:

"The ground of this jurisdiction in cases of pur-
presture, as well as of public nuisances, is the ability
of courts of equity to give a more speedy, effectual,
and permanent remedy, than can be had at law.   They
can not only prevent nuisances that are threatened, and
before irreparable mischief ensues, but arrest or abate
those in progress, and, by perpetual injunction, protect
the public against them in the future; whereas courts
of law can only reach existing nuisances, leaving
future acts to be the subject of new prosecutions or
proceedings.   This is a salutary jurisdiction, especially
where a nuisance affects the health, morals, or safety
of the community.   Though not frequently exercised,
the power undoubtedly exists in courts of equity thus
to protect the public against injury: *District Attorney*
v. *Lynn & Boston R. R. Co.,* 16 Gray (82 Mass.), 242,
245; *Attorney General* v. *New Jersey R. R.,* 3 N. J. Eq.

136, 139; *Attorney General* v. *Tudor Ice Co.*, 104 Mass. 239, 244 (6 Am. Rep. 227); *State* v. *Mayor etc.*, 5 Port. (Ala.) 279, 294 (30 Am. Dec. 564); *Hoole* v. *Attorney General*, 22 Ala. 190, 194; *Attorney General* v. *Hunter*, 16 N. C. (1 Dev. Eq.) 12; Eden on Injunctions, 259; Kerr on Injunctions (2 ed.), 168.

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits of equity brought to abate a public nuisance."

The opinion goes on further to hold in substance that while proof of the hurtful character of the thing in question must be afforded notwithstanding the legislative direction that such a thing shall be construed a nuisance, yet the equity tribunal is as competent to determine that matter as a court of law.

It would be intolerable to hold that the owner of property could defy the proper authority of a city or town by remaining outside its territorial jurisdiction while the use of his property in the manner forbidden by the police regulations would continue indefinitely. Nor does it avail the defendant to say that he has leased the property to another, for that is merely contracting with that other to manage the defendant's mill-race in a way forbidden by the police regulations.

10, 11. The city had a right under the circumstances to resort to the equity side of the State courts for relief. It does not attempt the extreme measure of utterly destroying the ditch; it merely required that his mill-race for a distance, according to the pleadings, of about three hundred feet, shall be kept covered with planking sufficient for ordinary travel. In our judgment, this is a reasonable exercise of the police power committed to the town by the general statute of 1893, and reasserted in the initiative charter. The existence of the open water-way in the principal thorough-

fare of the town primarily affects the local situation and it is legitimately within the scope of the authority of cities and towns under Article XI, Section 2, of the Constitution, empowering the legal voters thereof to enact and amend their municipal charters subject to the Constitution and criminal laws of the State of Oregon. It is also properly classified as local, special and municipal legislation, the initiative power over which is reserved to the legal voters of the municipality under Article IV, Section 1a, of the Constitution. That a city may resort to the courts in such an instance is further illustrated by the following precedents: *Bernard* v. *Willamette Box & Lumber Co.*, 64 Or. 223 (129 Pac. 1039); *San Francisco* v. *Buckman*, 111 Cal. 25 (143 Pac. 396); *Fresno* v. *Fresno Canal & Irr. Co.*, 98 Cal. 179 (32 Pac. 943); *Llano* v. *Llano County*, 5 Tex. Civ. App. 132 (23 S. W. 1008); *Village of Pine City* v. *Munch*, 42 Minn. 342 (44 N. W. 197, 6 L. R. A. 763); *Coast Co.* v. *Borough of Spring Lake*, 58 N. J. Eq. 586 (47 Atl. 1131, 51 L. R. A. 657); *City of Red Wing* v. *Guptil*, 72 Minn. 259 (75 N. W. 234, 71 Am. St. Rep. 485, 41 L. R. A. 321); *Inhabitants of Houlton* v. *Titcomb*, 102 Me. 272 (66 Atl. 733, 120 Am. St. Rep. 492, 10 L. R. A. (N. S.) 580). For instruction on many features of the instant case one may read with profit the opinion of Mr. Justice MOORE in *Mutual Irr. Co.* v. *Baker City*, 58 Or. 306 (110 Pac. 392, 113 Pac. 9).

The decree of the Circuit Court is therefore reversed and the cause remanded to that court with directions to enter a decree according to the prayer of the complaint, with a proviso that the defendant be allowed a reasonable time, there to be fixed, within which to comply with the demand of the plaintiff that the race be covered with substantial planking in a manner rea-

sonably safe to sustain ordinary travel over the highway in question.

REVERSED AND REMANDED.    REHEARING DENIED.

McBRIDE, C. J., and HARRIS and BEAN, JJ., concur.

---

Argued July 12, modified July 30, rehearing denied September 10, 1918.