## DOUGLAS COUNTY ROAD COMPANY, Respondents, *v.* CANYONVILLE AND GALESVILLE ROAD COMPANY, Appellants.

Public Road—County Court may Make Agreement for Appropriation by Private Corporation.—A corporation, having been organized to construct a road, located a portion of its road upon a public road, but made no application to the county court to agree upon the extent, terms, and conditions upon which such public road might be used, as provided in section 26 of the corporation law. Afterwards another corporation was organized to construct a road, and made an agreement with the county court as to the extent, terms, and conditions upon which the public road might be appropriated by the corporation as a part of its road. *Held*, that such agreement was valid, and that the corporation first organized had not the excluse right to contract with the county court for the use and appropriation of the public road, although it first surveyed and located the line of its road on the public highway. *Per* Mr. Justice Boise, dissenting: A road corporation may, when it is necessary and convenient, locate its road on the county road, whether the county court assent to it or not, and having done so, the right becomes property of which the corporation can not be deprived by the county court. The assent of the county court is only necessary to the right to collect tolls upon the road appropriated.

Appeal from Jackson County. The facts are stated in the opinion.

*W. R. Willis and R. S. Strahan*, for appellant:

A corporation formed for constructing a road, by surveying, locating, and adopting its line of road, acquires the right to acquire or appropriate land, right of way, public roads, etc., necessary for its purposes. And this right is property. (See Abb. Dig. Law of Corp. 585, sec. 13; 7 Met. 78; 3 Cush. 91, 106; 4 Id. 467; 1 Gray, 340, 360; 16

*Curtis* U. S. R. 793, 805; Civ. Code, 529, 530, secs. 23, 26; 23 Cal. 324.)   When one corporation has acquired this right, no other person or corporation can acquire the same right to the same lands, etc., so as to interfere with the former company.   (16 Curtis, 793, 801, 811; Abb. Dig. Law of Corp. 626, sec. 239; 10 Pick. 270; 54 Barb. 389, 390; 1 Gray, 1, 36, 37; 4 Id. 474; 13 Cal. 520; 23 Id. 324, 331.)

The appellant had surveyed, located, and adopted its line of road, and completed about five miles of it, before the respondent was organized.   If a corporation does not have the right to appropriate, the county court has no authority or jurisdiction to agree with it to appropriate a public road, under section 26, page 530 of Misc. Laws; and such jurisdiction must affirmatively appear on the face of the record of such proceedings.   (16 U. S. Annual Dig. 171, 621, secs. 5, 40, 41; 19 Id. 157, sec. 27; 4 Zabr. (N. J.) 547; 2 Or. 34–40.)   The word "appropriate," used in sections 24 and 26, page 530, Misc. Laws, does not refer to the right to acquire lands or the use of the public highway, but to the final appropriation.   (Misc. Laws, 529, 530, 533, 534, 535, secs. 23, 24, 26, 28, 40, 47, 52.)

There being no time fixed in the agreement between the county court and the respondent, during which the agreement is to continue in force, either party can terminate it at pleasure.   (Fry on Specific Performance, sec. 43, 222–230; 7 U. S. Dig. 172, subd. 191; 39 Wis. 562.)

*John M. Thompson and J. F. Gazley*, for respondent:

No corporation has the power or legal right to appropriate a highway by user, without in the first place attempting to make an agreement with the county court.   (5 Or. 322; Misc. Laws, 530, sec. 26.)   The agreement between the respondent and Douglas county was binding on Douglas county, and duly made.   (6 Or. 300.)

Generally, as a contract can be made only by the mutual consent of all the contracting parties, it can only be rescinded by the consent of all.   (2 Parsons on Con. 677.) The statute fixes the time the agreement is to run, which is at least ten years.   (Misc. Laws, 533, sec. 38.)

By the Court, KELLY, C. J.:

The subject matter of this controversy in one shape or another, has been several times before this court, and certain points of law and questions of fact have been settled by its decisions, which can not any longer be considered as open to controversy. These matters, so far as they are *res judicata*, will be referred to hereafter. The matter especially in contention between the parties is, as to which of the corporations, the respondent or the appellant, is entitled to establish a toll gate and collect tolls on the road running through what is known as the Big canyon in Canyonville and Cow creek precincts in Douglas county.

In 1853, a military road was laid out, under Major Alvord, by Jesse Applegate on substantially the same ground as that now occupied by the road in controversy; and on the sixteenth of January, 1854, the legislative assembly of Oregon territory, by an act passed that day, enacted " that the military road from Myrtle creek in Douglas county to Jacksonville, Jackson county, be and the same is hereby declared a territorial road."

By an act of the legislative assembly, approved October 29, 1860, all territorial roads in this state were declared to be county roads, and by the act of January 17, 1861, were placed under the supervision of the county court. In the case of *Douglas County Road Company* v. *Abraham et al.* (5 Or. 319), this court decided that the same road referred to in this suit, having been used continuously for twenty-five years by the public, it became a public highway by continued and uninterrupted use. There can, therefore, be no doubt that this road, in August, 1873, when the corporate appellant was organized, was a county road, and under the supervision of the county court of Douglas county. In September, 1873, soon after its incorporation, the appellant employed J. W. Webber to survey and locate its road through the Big canyon, and it is admitted that the line of survey was along and on the county road with some slight deviations, which are of no importance in the consideration of this case. In December, 1873, the Douglas County Road

Company, the respondent, was duly incorporated to construct a plank and clay road through the Big canyon, commencing at the the southwest quarter of the northeast quarter of section 34, T. 30 S., R. 5 W., running thence in a southerly direction and terminating at a point where the military wagon road crossed the south line of section 2, in T. 32 S., R. 5 W.

It is admitted that the line of this road which passed through the Big canyon, is along and upon the county road and substantially over the same route as that surveyed in September, 1873, by the appellant, for its road. On the tenth of April, 1874, the respondent entered into an agreement with the county court for the appropriation, use, and occupation of the road in controversy. In this agreement it was stipulated that the respondent should have the right to collect certain tolls from persons traveling over the road; and in consideration of this privilege the respondent covenanted to bridge the streams, and to keep the highway in good condition for the public travel.

The following are the sections of the law under which the agreement was made: "Where it shall be necessary or convenient in the location of any road herein mentioned to appropriate any part of any public road, street, or alley, or public grounds, the county court of the county wherein such road, street, alley or public grounds may be, unless within the corporate limits of a municipal corporation, is authorized to agree with the corporation constructing the road, upon the extent, terms, and conditions upon which the same may be appropriated or used and occupied by such corporations, and if such parties shall be unable to agree thereon, such corporation may appropriate so much thereof as may be necessary and convenient in the location and construction of said road." (Misc. Laws, 530, sec. 26.) "Whenever such public highway or grounds is taken by a private corporation by agreement with the local authorities mentioned in section 26, such corporation may place such gates thereon, and charge and receive such tolls thereat, as such local authorities may consent to, by such agreement, and none other." * * (Id. sec. 28.)

The agreement between the county court and the respondent before referred to was filed in the office of the county clerk but was not entered in the journal of the court, and for this want of record, it is held by the majority of this court that it was ineffectual and inadmissible as evidence in other courts until it was entered upon the records of the county court. And it was only after protracted litigation and through the mandatory power of this court that it was finally, on the thirty-first day of May, 1870, entered upon the journal of the county court. It is unnecessary here to refer to the history of this litigation. It is fully set forth in the opinion of the supreme court in the case of *The Douglas County Road Company* v. *The County of Douglas*, 6 Or. 300. It must now be considered as conclusively settled, so far as this court can settle anything by its adjudications, that the agreement entered into between the county court of Douglas county and the respondent, on the tenth day of April, 1874, was a valid contract, binding and conclusive between the parties to it. This matter is no longer open to controversy. But the appellant claims that as it was not a party to any of the litigation heretofore had concerning this contract, it is not bound by the decision of the court in reference to it, and it asserts that so far as its rights are concerned, that contract was a nullity. The appellant claims that in the location of its road in September, 1873, it was necessary and convenient for it to appropriate a part of the public highway running through the canyon, and that having surveyed and located its line of road along the county road before the incorporation of the Douglas County Road Company, it had the exclusive right to appropriate the county road as a part of its own road, and that it alone had the right by virtue of its first survey and location to enter into an agreement with the county court for the purpose of making and keeping the road in repair, and charging toll to persons passing over it.

The appellant had a right under the law in relation to corporations, to enter upon any lands between the termini of its road for the purpose of examining, surveying, and locating the line of it, and to appropriate a strip of land not

exceeding sixty feet in width for its road where the lands belong to private individuals. And it had also the right, in case it could not agree with the owners thereof as to the compensation to be paid therefor, to maintain an action against such owner, to have the value assessed and the land condemned and appropriated to its own exclusive use. And we think that if the appellant entered upon, surveyed, and selected any land for its road, which belonged to private persons, it had the exclusive right from the time of such survey and selection to appropriate the same, and that the respondent could not in any way interfere with such right, nor construct its road upon any such lands. But it does not follow that, by surveying a public highway, and making it a part of its corporate road, the appellant thereby acquired the right to appropriate the same to its exclusive benefit; nor does it follow that the respondent had no right to use such public road as a part of its corporate road, in the same manner as the appellant. The statute contemplates that in the construction of a road by a corporation, it may sometimes be necessary or convenient to use part of a highway, as where it passed through a defile, or where it is difficult to construct a road along side of the public highway, and in such cases it is provided that the public road, or so much thereof as may be necessary and convenient, may be used, or, in the words of the statute, " may be appropriated by the corporation." The road appropriated, is not, however, to be here understood in the same sense as in the appropriation of lands belonging to private individuals where the corporation becomes entitled to the property. By the appropriation of part of a highway, the corporation acquires no right except to use the public road in common with all others traveling upon it, unless it makes an agreement with the county court as provided in section twenty-six, above quoted. This section of the statute does not provide that any part of a public road " may be appropriated, or used and occupied," by only one corporation; nor that the first one which so uses and occupies it, or which first surveys it, shall have any exclusive privileges over any other corporation which may

subsequently be organized. And we think it would be un-
wise and impolitic to construe the statute so as to confer
exclusive benefits upon one corporation and exclude all
others from the right to compete for the public travel on the
public highways.

The old doctrine was, that when a grant of a franchise to
construct a road, to build a bridge, or to keep a ferry, was
made to a person or corporation, it was an exclusive privi-
lege, with which no other person or corporation could in-
terfere by competition so as to lessen the profits of the first
grantee. But this subject was thoroughly discussed in the
case of *Charles River Bridge* v. *Warren Bridge* (11 Pet.
421); and the right of exclusive franchises of this kind in
favor of the first grantee, was completety overthrown. (*In-
dian Canyon Road Co.* v. *Robinson*, 13 Cal. 519.)

If we were to give the construction to the statute con-
tended for, then the appellant, having first surveyed and
selected the part of the county road through the Big Can-
yon, could virtually fix its own rate of tolls for traveling
over the road, and the county court would either have to
make a contract acceding to its demands, or suffer the road
to become impassable for the want of necessary repairs. If
the county court should make no agreement, the appellant
could nevertheless appropriate and use the road, while it
would be under no obligations to make any repairs upon it,
and could refuse to do so until necessity would compel the
court to yield to the terms demanded. We do not say that
this would have been the case, but it might have been, and
we should not give such a construction to the law as would
place it in the power of any corporation to exact its own
terms for the use of the public roads of the state. We
ought to construe it for the public good, rather than private
gain, or as conferring exclusive privileges upon any corpo-
ration. And this can only be done by inviting competition,
and by authorizing the county court to confer the privilege
of taking tolls on that corporation which will make the less
onerous exactions on the traveling public.

Although the appellant caused a survey and location of
its road to be made in September, 1873, yet from that time

until February 8, 1875, it made no application to the county court to enter into a contract to construct and keep in repair the public road leading through the canyon, and for the privilege of collecting tolls therefrom. Indeed, the evidence shows that during all that time, the appellant refused to recognize the existence of any public road through the canyon, and all the money expended by it in the construction of the road was for the purpose of making a corporate road, rather than to improve the public highway. Under these circumstances, the county court had a right to enter into the agreement of April 10, 1874. That agreement this court has heretofore held to be a valid and binding contract, and we can not now question the correctness of its decisions upon this point.

It is claimed by the appellant that on the fifteenth day of January, 1878, the county court of Douglas county revoked and annulled the agreement entered into by it with the respondent. It is hardly necessary to call any authority to show that this attempted revocation, without due process of law, amounted to nothing.

The circuit court rendered a decree in favor of the respondent for seven thousand dollars damages, sustained by reason of the wrongful acts of the appellant in collecting toll from February, 1875, to May, 1877. This we think was erroneous. At the December term, 1874, this court, by its decree, adjudged that the agreement of April 10, 1874, was ineffectual as a contract, because it was not entered upon the journal of the county court. And until it was so entered, the respondent refrained from collecting tolls from persons traveling on the road. If it could not lawfully collect these tolls from travelers, then neither has it a right to recover them from the appellant now, even though it wrongfully received them from persons traveling on the road. The contract was not entered on the county record until May 31, 1878, but a few days before the amended complaint was filed, and the respondent was not, therefore, entitled to recover anything in this suit for the unlawful collection of tolls by the appellant. With this exception, the decree of the court below is affirmed.

Decree modified.

Mr. Justice BOISE, dissenting:

In this case, I have not been able to agree with a majority of the court in their conclusions that the decree in this case should be affirmed.

It appears from the evidence that the appellant in August, 1873, became an organized corporation by electing directors, and soon thereafter caused their road through the canyon to be laid out, surveyed, and located, which survey was adopted by the board of directors as their location of said road, and said company commenced constructing their road on such location, and had made considerable progress therein, before the Douglas County Road Company was organized. After the appellant was organized and had located the line of their road, the respondent also organized and located a road over substantially the same route, for it is evident from the testimony that there is but one route through the canyon for a road. And the first question in the case is, Had the appellant acquired by this location such an interest in the route and that part of the county road before constructed through the canyon that it could legally maintain the right of way over said county road, and hold it against the alleged rights of the respondent acquired through its contract with the county court of Douglas county?

The statute (Misc. Laws, 529, sec. 23) provides generally, "that a corporation organized to construct a road, shall have the right to appropriate the lands over which it may be located," and section 26 provides "that such corporation may appropriate such parts of any county road as shall be necessary and convenient in the construction of such road."

In the first instance, where the lands of private persons are taken, the statute points out how compensation shall be made to owners of lands so taken, for damages sustained by them in locating the road over their lands. In the case where a county road is appropriated, the county court can agree with the corporation on the terms on which said county road may be used by the corporation. But if the

county court and the corporation can not agree, then the corporation may appropriate so much of said county road as may be necessary and convenient in the location and construction of said corporate road.

Section 28 provides " that when such public highway (or county road) is taken by agreement with the county court, such corporation may place such gates thereon and charge such tolls thereat as the county court shall consent to in such agreement, and none other."

So it appears from these provisions of the statute that the corporation has the right on the location of its line of road to appropriate a county road where necessary and convenient, whether the county court assent to it or not, but have no right to charge tolls on such county road unless the same be allowed by an agreement with the county court; and the object of this agreement with the county court would seem to be to obtain the right to collect tolls on the roads so far appropriated; for the county court has no power to prevent the corporation from using such county road, and their using the same for the purposes of travel would be no public injury, and the rights of the public are protected by the inhibition of the corporation from collecting tolls on such portions of the county road as are taken and used on the line of the corporate road, unless the same are allowed to be collected by an agreement with the county court.

I think, therefore, that the appellant, having first established its line of road through the canyon, acquired thereby the prior right to appropriate this county road, and that this right was property of which they could not be deprived by the action of the county court. That is, that the appellant had the same right to locate its road on this county road as it had to locate it over the lands of private persons, and that the only object in making an agreement with the county court was to obtain the privilege of putting a gate on such county road and collecting tolls.

These are rival corporations, each seeking to secure the right to construct a road over substantially the same route, and I think that the one that was first in time in organizing

and locating the route, thereby appropriated it to the exclusion of one less expeditious. It has been held in Maryland, in the case of the *Chesepeake Canal Co.* v. *Ohio R. R. Co.*, 4 Gill & J. 1, that the right to select and acquire land for the authorized purposes of a corporation is property. It is an incorporeal hereditament, not a legal title to the land itself, nor a mere capacity or faculty to acquire land, such as every individual possesses, but a right or privilege to acquire that right in the land necessary to the enjoyment of the franchise. And no corporation, after the previous grant of such right to another, can legally acquire any such right of way over or title to the land over which the franchise extends, as will hinder the corporation first acquiring the right from the enjoyment of its franchise; and the same doctrine is announced in the case of *West Bridge Co.* v. *Dix*, 16 Curtis, 802; in Massachusetts in the *Charleston Branch R. R. Co.* v. *County of Middlesex*, 7 Met. 78; and in the case of *Boston Bridge Petitioners* v. *County of Middlesex*, 10 Pick. 269; Abb. Dig. Law of Corp. 626, sec. 239. I think, therefore, that the Canyonville and Galesville Road Co. are first in time and first in right in securing their franchise.

It is claimed that the appellant lost its right to appropriate this county road by not making application for an agreement with the county court of Douglas county before respondent made an agreement with such court giving to respondent the right to use said county road.

This may be answered by an illustration: Suppose that after the appellant had organized and proceeded to locate the line of its road, the same crossed the land of a private person; and the respondent, having subsequently organized, had proceeded to such private person and by agreement with him got the right of way, while the appellant was diligently pursuing the business of its location, but before it had reached that part of the line over the land of such private person; such purchase would not defeat the right of appellant to proceed and appropriate the land for the use of his former acquired right of way over it, and I think the same principle applies to the appropriation of a

county road. It was first necessary for the corporation to locate the line of its road before it could know how much and what part of said county road it would be necessary and convenient to appropriate. I do not think that the decision of this court in a former case, affirming the order of the circuit court to enter *nunc pro tunc* an order made by the county court of Douglas county on its records, in any way settles or determines the right of appellant under its corporate privileges. These rights were not litigated in that case.